DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ROUDELY PERSONNA,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D22-2518

[May 10, 2023]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Lawrence M. Mirman, Judge; L.T. Case No. 562019CF002052AXXXXX.

Carey Haughwout, Public Defender, and Mara C. Herbert and Christine C. Geraghty, Assistant Public Defenders, West Palm Beach, for appellant.

No appearance required for appellee.

### *ON MOTION FOR EXTENSION OF TIME FOR INITIAL BRIEF*

PER CURIAM.

This is an appeal from a judgment and sentence. Appellant was sentenced to life in prison after being convicted of robbery with a deadly weapon and kidnapping. After we had previously issued a "no further extensions" order, appellant moved for an extension of time to serve the initial brief that we reluctantly granted on April 14, 2023. In the order granting that motion, we also stated that an opinion would follow.

In this non-dispositive opinion regarding what occurred in this case, we write to address two practices that have become more commonplace in this court and others. Specifically, this court has seen multiple instances where counsel attempts to indirectly receive an extension of time to file a brief by seeking supplementation of the record on appeal, usually after counsel has exhausted all their agreed extensions of time. We have also seen that "no further extensions" orders by this court and resulting deadlines for compliance are being treated by some as mere suggestions that can be ignored with impunity.

A motion to supplement the record is not a motion for extension of time, nor is it a tool for indirectly obtaining an extension of time. *Debose v. State*, 48 Fla. L. Weekly D427, D429 (Fla. 1st DCA Feb. 22, 2023). But as our sister court acknowledged, "a lot of lawyers seem to be abusing the extension and supplementation process as a workload management technique—to kick the can down the road." *Id.* (Kelsey, J., concurring in part and dissenting in part).

Florida attorneys are required to "act with reasonable diligence and promptness in representing a client." R. Regulating Fla. Bar 4-1.3. As part of their responsibility of diligently representing clients, attorneys are charged with managing their workload and ensuring all work is completed in a timely manner. "Counsel's obligation of timeliness demands an early, careful, and complete assessment of the need to supplement the record on appeal, so as to avoid unnecessary delay in disposition." *Verasso v. State*, 346 So. 3d 1282, 1283 (Fla. 1st DCA 2022). Seeking supplementation in an untimely manner not only prejudices opposing parties but also "makes it harder for us to comply with our timeliness standards, and dampens litigants' expectations of relatively quick answers." *Debose*, 48 Fla. L. Weekly at D429 (Kelsey, J., concurring in part and dissenting in part). Put simply, the untimely filing of motions to supplement the record slows down the entire appellate process.

Here, appellant's counsel did not act diligently in submitting the initial brief. After counsel failed to timely file the initial brief pursuant to a November 18, 2022, agreed extension of time, this court issued an order to show cause on December 27 for lack of prosecution. Later, after having already received ninety days in agreed extensions, counsel filed another motion for extension of time while assuring this court that "[t]his initial brief is essentially complete," and requesting an additional ten days to serve it. This court granted that motion with the proviso "that no further extensions will be granted absent a detailed explanation for why the initial brief has not yet been filed" and with a specific warning that "[a]ttorney workload does not constitute extraordinary circumstances which justifies a further extension of time."

Instead of timely serving the initial brief, counsel waited until the day before it was due—February 28, 2023—to seek supplementation of the record to add a single hearing transcript. We granted the motion to supplement, which effectively served as an additional extension and tolled the time to serve the initial brief until ten days after receipt of the supplemental record. Counsel transmitted the supplemental record, a forty-two-page transcript, on March 31, resulting in counsel *once again*

moving for an extension of time to serve the initial brief—but this time waiting until *the due date for the brief*, April 12, to file that request.

Despite being previously advised that no further extensions would be granted absent a detailed explanation of extraordinary circumstances and indifferent to our specific warning that attorney workload was not a valid excuse to further delay this appeal, counsel nonetheless sought an additional extension on the sole basis of "overall caseload" without providing any supporting information. We denied that request for extension and ordered counsel to file the initial brief by 5:00 p.m. on April 14.

In response, this court received *yet another* motion for extension of time—this one filed by a different attorney. When it became obvious that counsel was not going to timely comply with our prior order, and rather than foreclose appellant from filing a brief, we *again* extended the time for compliance until noon on April 17. Though counsel ultimately filed the initial brief on the morning of April 17, it was amended two and a half hours after the deadline.

We struggle to think of a legitimate reason for why it took counsel four months to realize a single transcript was missing from the record on appeal. If counsel had conducted a thorough examination of the record at the first opportunity, the missing transcript could have been identified at an early stage and timely supplemented into the record.[1] We understand not every issue can be addressed as early as possible due to high workload volume or a shortage in support staff, "[b]ut it is not more work to address record supplementation up front, and this should become a priority." *Debose*, 48 Fla. L. Weekly at D429 (Kelsey, J., concurring in part and dissenting in part). As previously stated, attorneys are charged with acting diligently, and early recognition of the need to supplement the record not only benefits the parties but also the court itself.

We also struggle to think of a reasonable explanation for counsel's decision to file motions for extension of time because of "workload" after receiving several prior extensions, after being expressly advised that further extensions for "workload" reasons would not be granted absent extraordinary circumstances, and after previously representing to the court that the brief was near completion. In violation of this court's order, counsel filed a short, conclusory request for an extension—and did so on the date the brief was due—rather than a "detailed explanation . . . and a

---

[1] We note that no reference to the supplemented transcript appears in either the initial or amended brief.

showing of extraordinary circumstances where, if a further extension is not granted, irreparable and material harm will result to the litigant" as our order required. Including the time provided by Rule 9.140(g)(1), counsel succeeded in obtaining a total of 130 days to review the record and prepare the initial brief. Simply put, this is unacceptable.

Candor before a court is necessary to ensure an efficient disposition of motions, and this court needs to "be able to rely upon the accuracy of representations of counsel" for "the expeditious handling of motions." *Hilltop Devs., Inc. v. Masterpiece Homes, Inc.*, 455 So. 2d 1155, 1156 (Fla. 5th DCA 1984). If the initial brief was not as close to completion as counsel represented, then counsel should have (and could have) provided further clarification in the motion. Requesting an extension of time while merely citing a heavy caseload in the face of a "no further extensions" order—and waiting to do so until the due date for the initial brief—shows not just a deficiency in time management but also a disregard for this court's orders.

We understand that workload issues can affect an attorney's ability to meet initial deadlines set by the court. That is why our practice has been to liberally grant extensions of those early deadlines upon request. However, multiple and serial extensions of time interfere with the administration of justice. Litigants in our courts have a due process right to have their appeals heard in a timely manner. *See Rheuark v. Shaw*, 628 F.2d 297, 302 (5th Cir. 1980) ("We are convinced that due process can be denied by any substantial retardation of the appellate process . . . ."). In our system, the highest priority is given to trials and appeals in criminal cases. *Freeman v. State*, 621 So. 2d 472, 472–73 (Fla. 4th DCA 1993). The obligation to ensure that appeals in "this District are expeditiously processed ultimately falls to this court," and attorneys are advised that we take that obligation seriously. *See In re Downtown Reporting, LLC.*, 146 So. 3d 91, 95 (Fla. 3d DCA 2014).

When attorneys disregard the appellate court's orders or rules, the court possesses the authority to impose sanctions in appropriate cases, including dismissal of an appeal. *See* Fla. R. App. P. 9.410(a) ("[T]he court may impose sanctions for any violation of these rules, or for the filing of any proceeding, motion, brief, or other paper that is frivolous or in bad faith."); *Hastings v. State*, 640 So. 2d 115, 116 (Fla. 2d DCA 1994). "[D]ismissal of an appellate proceeding should be employed sparingly and only after repeated violations or contumacious disregard of a court's orders." *Craig v. Preston*, 593 So. 2d 578, 578 (Fla. 3d DCA 1992) (quoting *Krebs v. State*, 588 So. 2d 38, 38 (Fla. 5th DCA 1991)) (quashing order dismissing appeal for failure to timely file initial brief, where briefing schedule was ambiguous); *see also Mathis*, 726 So. 2d at 393 ("[F]indings

4

of willful noncompliance are almost always a prerequisite for dismissing a claim for disobedience of a prior order.").

We are also mindful that dismissal of an appeal for the untimely filing of a brief serves only to penalize the client for the shortcomings of counsel, failings which can better be addressed using other sanctions such as fines, costs, reprimand, and contempt. *Gentry v. Gentry*, 463 So. 2d 511, 512–13 (Fla. 1st DCA 1985) (issuing a public reprimand rather than dismissing the case to avoid penalizing the client); *see also Magier v. Solomon & Benedict, P.A.*, 704 So. 2d 685, 686 (Fla. 2d DCA 1997) (holding that "dismissal of the petitioners' appeal was an unwarranted sanction that resulted in a clear departure from the essential requirements of the law"); *Hastings*, 640 So. 2d at 116 ("[W]e generally seek to avoid the harsh result of dismissal[,] which can result in the sins of the attorney being visited upon the client [. . . .]") (quoting *Moose v. State*, 519 So. 2d 61, 62 (Fla. 2d DCA 1988)); *Krebs*, 588 So. 2d at 39 (noting that "other sanctions are available to the lower tribunal under rule 9.410, Florida Rules of Appellate Procedure, including assessment of attorney's fees against appellant's counsel for wasted time and expenses attributable to his negligence"); *Moose*, 519 So. 2d at 63 (ordering monetary sanctions against the attorney, publishing a public reprimand as sanctions against the attorney, forwarding the opinion to the Florida Bar Grievance Committee, and requiring swift prosecution of the appeal). In this case, the conduct of counsel, while egregious, does not rise to the level justifying dismissal in this case, although that and other options as mentioned above may be both available and appropriate for any future abuses.

To be clear, this court will not tolerate the disregard of its "no further extensions" orders or other means that unreasonably delay our proceedings, including improper attempts to circumvent the appellate process by seeking indirect extensions of time through the filing of late motions to supplement the record. As the Third District has stated, "the court emphasizes to . . . all other persons or entities that may receive a 'No Further Extensions' order from this Court, that the Court says what it means, and means what it says in such an order. Failure to comply with a 'No Further Extensions Order' from this Court may be deemed contemptuous, absent a showing of extraordinary good cause." *In re Downtown Reporting, LLC.*, 146 So. 3d at 95.

KLINGENSMITH, C.J., DAMOORGIAN and LEVINE, JJ., concur.

\*     \*     \*

***Not final until disposition of timely filed motion for rehearing.***